**SO ORDERED.**

**SIGNED this 9 day of August, 2013.**

                                                    _____
                                                    Stephani W. Humrickhouse
                                                    United States Bankruptcy Judge

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

**MILTON N. WARD, III**

    **DEBTOR**


**MILTON N. WARD, III**

    Plaintiff                             MISCELLANEOUS PROCEEDING
                                                        NO.

    v.

                                                         H-12-00001-8-MP

**UNITED STATES DEPARTMENT OF**
**EDUCATION**

    **Defendant.**

**MEMORANDUM OPINION AND ORDER ALLOWING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The matter before the court is the motion filed by the defendant, the United States Department of Education, for summary judgment in this adversary proceeding. A hearing took place in Raleigh, North Carolina, on June 13, 2013. For the reasons that follow, the motion will be granted.

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference

entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(I), which this court may hear and determine.

## Background

Milton N. Ward, III filed a petition for relief under chapter 7 of the Bankruptcy Code on September 13, 2011, in the Eastern District of Virginia (Case No. 11-16679-BFK). Although Mr. Ward has since received a discharge on January 31, 2012, and his bankruptcy case has been closed, the present adversary proceeding remains pending. Mr. Ward initiated this proceeding by filing a complaint in the United States Bankruptcy Court for the Eastern District of Virginia on December 8, 2011, without the assistance of counsel, seeking a discharge of his student loan obligations to the United States Department of Education ("USDE"). The student loan debt at issue arose in connection with the plaintiff's studies at the University of North Carolina at Greensboro and totals at least $70,433.41. See Response to Mot. For Summary Judgment, Docket No. 31.

In his complaint, the plaintiff asserted two claims: (1) that repayment of his student loans imposes an undue hardship and the debt is therefore dischargeable pursuant to § 523(a)(8) of the Bankruptcy Code, and alternatively, (2) that § 523(a)(8) violates the equal protection clause of the United States Constitution and should be overturned. On March 19, 2012, the USDE filed its answer and moved to dismiss the plaintiff's second claim. Prior to the Virginia court's ruling on the motion to dismiss, the plaintiff was permitted to, and did, amend his complaint on April 23, 2012. In the amended complaint, the plaintiff included the claim of undue hardship from the initial complaint, but modified the constitutional claim by primarily asserting that § 523(a)(8) is void for vagueness

under the due process clause of the 5th Amendment to the Constitution. On May 18, 2012, the Virginia court granted the USDE's motion to dismiss the plaintiff's second claim.[1]

Upon the plaintiff's motion, the adversary proceeding was transferred to this court on September 6, 2012. The USDE filed the instant motion for summary judgment on December 10, 2012, as to the plaintiff's first and only remaining claim, i.e., that his student loans impose an undue hardship and should be discharged. On February 11, 2013, the plaintiff filed a motion for leave to amend his complaint for the second time, along with a copy of the proposed amendment to the amended complaint (the "Second Amended Complaint"). In this amendment, the plaintiff maintains his first claim for relief, seeking discharge pursuant to § 523(a)(8), and again raises his alternative/second claim for relief on constitutional grounds, which was previously dismissed by the Virginia bankruptcy court. At the hearing on the motion to amend the complaint, the plaintiff stated that the second claim was included in the Second Amended Complaint solely to preserve the dismissal of the claim for appeal. In an order dated March 28, 2013, the court allowed the amendment, noting that the USDE would not be required to file another answer given that only legal arguments were asserted, without any new factual allegations. The order further provided that the pending motion for summary judgment shall apply to all claims in the Second Amended Complaint.

In the Second Amended Complaint, in support of his claim for discharge of his student loan debt pursuant to § 523(a)(8), the plaintiff states that he is unable to repay the debt based on factors beyond his control, including the reluctance of employers to hire job applicants who have been unemployed for a long period of time, are near or over the age of 50, or who have changed jobs

---

[1] The plaintiff filed a notice of appeal as to the dismissal of his constitutional claim on May 29, 2012. On September 28, 2012, the District Court for the Eastern District of Virginia dismissed the appeal, finding that it did not meet the standard for interlocutory review.

3

frequently. Along with the Second Amended Complaint, the plaintiff filed an affidavit and a brief entitled, "Plaintiff's Brief On Why Precedent Denying Discharge of Student Loan Debt in Bankruptcy Based on Debtor Conduct Should Not Be Followed." See Doc. Nos. 27 and 30. This brief is referenced by the Second Amended Complaint, in support of the assertion that dischargeability should be "determined solely on the basis of [the plaintiff's] ability to pay back the loan in full and the effect of nondischarge on the debtor." Doc. No. 28. Alternatively, the Second Amended Complaint states that § 523(a)(8) is void for vagueness under the due process clause of the 5th Amendment to the United States Constitution and should be clarified by Congress; in the meantime, plaintiff asserts that student loans should be considered regular unsecured loans and discharged accordingly.

The USDE seeks summary judgment in this proceeding, contending that the plaintiff is a healthy, educated, employable individual, and therefore cannot meet the legal standard for discharge of his student loans. Further, the USDE asserts that the plaintiff has never sought to utilize an alternative repayment plan, despite being eligible for the Income Based Repayment Plan, under which his payment would be $0 as long as he is unemployed and at the end of the twenty-five year repayment period, the balance would be forgiven. As to plaintiff's constitutional claim, the USDE argues that this claim has already been dismissed in the present proceeding, and such dismissal constitutes the law of the case. As such, the USDE asserts that this court may not rule on the constitutional claim.

The plaintiff, however, contends that certain issues of fact should prevent summary judgment. According to plaintiff, although the USDE asserts that he is capable of working, there is a difference between capability and employability, and despite his capability, employers will not

4

hire him because of his long term unemployment, spotty work history, and age. Further, he argues that if he utilized the Income Based Repayment Plan, the payments would be high during periods of employment, the balance would continue to grow, and at the end of the twenty-five year term, he would not be able to pay the substantial tax obligation that would arise based on the forgiveness of the balance.

At the same time, the plaintiff contends that the majority of case law interpreting § 523(a)(8), including the test set forth in <u>Brunner v. New York State Higher Educ. Servs. Corp.</u>, 831 F.2d 395 (2d Cir. 1987), which was adopted by the Fourth Circuit in <u>Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)</u>, 433 F.3d 393 (4th Cir. 2005), is overreaching to the point that it leads to arbitrary decisions, and therefore should not be followed. Thus, although the plaintiff essentially conceded at the hearing that he would have difficulty satisfying the <u>Brunner</u> test, the plaintiff's position is that <u>Brunner</u> is bad law and therefore should not be applied in this case. Finally, plaintiff asserts that the summary judgment motion should only apply to his first claim, because the motion does not address the constitutional claim. The plaintiff further stated that his objective is to both augment the constitutional claim through discovery and preserve the claim for appeal.

## Discussion

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In making this determination, conflicts are resolved by viewing all facts and inferences to be drawn from the facts in the light most favorable to the non-moving party. <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655, 82 S. Ct. 993,

994 (1962) (per curiam).  Summary judgment is not a "disfavored procedural shortcut," but an important mechanism for filtering out "claims and defenses [that] have no factual basis."  <u>Celotex</u>, 477 U.S. at 327, 106 S. Ct. at 2555.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  <u>Celotex</u>, 477 U.S. at 323, 106 S. Ct. at 2552.  Summary judgment should not be granted "unless the moving party has established his right to a judgment with such clarity as to leave no room for controversy."  <u>Portis v. Folk Constr. Co.</u>, 694 F.2d 520, 522 (8th Cir. 1982) (internal quotations omitted).

Section 523(a)(8) of the Bankruptcy Code provides that "unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents," the following debts may not be discharged:

> (A)(i) an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>
>> (ii) an obligation to repay funds received as an educational benefit, scholarship or stipend; or
>
> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

11 U.S.C. § 523(a)(8).  There is no dispute that the student loans made to the defendant in this proceeding are the type of loans that would not be discharged if the debtor cannot establish an "undue hardship."

Section 523(a)(8) of the Bankruptcy Code makes it extremely difficult for debtors to discharge student loans.  "Debtors receive valuable benefits from congressionally authorized loans, but Congress in turn requires loan recipients to repay them in all but the most dire circumstances."  <u>Educational Management Corp. v. Frushour (In re Frushour)</u>, 433 F.3d 393, 399 (4th Cir. 2005)

6

(citing Pa. Higher Educ. Assistance Agency v. Faish (In re Faish), 72 F.3d 298, 306 (3d Cir. 1995)). Debtors must show "exceptional circumstances," and must prove that "they are in the *limited class* of debtors for which § 523(a)(8) is meant to allow discharge." Educational Credit Mgmt. Corp. v. Mosko (In re Mosko), 515 F.3d 319, 324 (4th Cir. 2008) (citing Frushour, 433 F.3d at 404) (emphasis added in Mosko). "Congress sought to ensure repayment of educational loans through its use of the term 'undue' and the courts are obligated to follow its imperative." Frushour, 433 F.3d at 396. A "garden-variety hardship" is an "insufficient excuse for a discharge of student loans." Frushour, 433 F.3d at 399 (quoting Rifino v. United States (In re Rifino), 245 F.3d 1083, 1087 (9th Cir. 2001)).

The term "undue hardship," as used in § 523(a)(8), is not defined, but most courts have looked for guidance to the three-part Brunner test developed by the United States Court of Appeals for the Second Circuit more than twenty years ago in Brunner v. New York State Higher Education Services, 831 F.2d 395 (2d Cir. 1987). The Court of Appeals for the Fourth Circuit applies the Brunner test. See Ekenasi v. Education Res. Inst. (In re Ekenasi), 325 F.3d 541 (4th Cir. 2003) (adopting the Brunner test in chapter 13 cases); Frushour, 433 F.3d 393 (adopting the Brunner test in chapter 7 cases). The Brunner test requires debtors to establish, by a preponderance of the evidence, the following factors:

> (1) they cannot maintain, based on current income and expenses, a minimal standard of living for themselves and their dependent[s] if forced to repay the loans;
> (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of their student loans; and
> (3) they have made good-faith efforts to repay their student loans.

Mosko, 515 F.3d at 323. A debtor must meet all three prongs of the Brunner test for the debtor's student loans to be dischargeable.

The plaintiff urges the court not to follow <u>Brunner</u> on the basis that it allows judges to exceed their authority and interpret the "undue hardship" standard of §523(a)(8) in an arbitrary manner and according to their own ideals, producing inconsistent and unfair results. Recently, some courts have expressed similar dissatisfaction with the <u>Brunner</u> standard. For example, while rejecting a lower court's focus on future ability to pay under the "good faith" prong of <u>Brunner</u> (which was adopted by the Seventh Circuit in <u>In re Roberson</u>, 999 F.2d 1132 (7th Cir. 1993)), the Seventh Circuit cautioned: "[i]t is important not to allow judicial glosses, such as the language in *Roberson* and *Brunner* to supersede the statute itself." <u>Krieger v. Educ. Credit Mgmt. Corp.</u>, 713 F.3d 882, 884 (7th Cir. 2013). Later in the same opinion, finding no error in the bankruptcy judge's conclusion that the debtor's situation was hopeless, the court noted that such a finding may be "unduly pessimistic, but a judge asked to apply a multi-factor standard interpreting an open-ended statute necessarily has latitude; the more vague the standard, the harder it is to find error in its application." <u>Id.</u> at 885. Additionally, in a concurring opinion in <u>Roth v. Educ. Credit Mgmt. Corp. (In re Roth)</u>, the Honorable Jim D. Pappas called for a reexamination of <u>Brunner</u>, stating that its undue hardship analysis is "too narrow, no longer reflects reality, and should be revised by the Ninth Circuit when it has the opportunity to do so." 490 B.R. 908, 920 (B.A.P. 9th Cir. 2013). Both of these decisions resulted in the discharge of the respective debtors' student loans.

Notwithstanding the fact that some courts agree with the plaintiff's position, which was particularly well researched and articulated, *this* court is bound by the precedent of the Fourth Circuit Court of Appeals and must apply the <u>Brunner</u> test. Turning to the first prong of the test, i.e., whether the debtor can maintain a minimal standard of living based on current income and expenses if forced to repay the loans, the USDE presented no argument in this regard, apparently conceding

the point. The plaintiff is currently unemployed, and his unemployment benefits have expired. Plaintiff's Affidavit, Docket No. 27. Although plaintiff made extensive efforts to start a management consulting business while living in Virginia, he does not appear to receive income from this venture, and states that he lacks the money necessary to continue those efforts. Id. Plaintiff has also created a profile on a freelance project website, but likewise cannot pay the fees associated with verifying that profile and his credentials, in order to be a more attractive accounting project candidate. Id. Thus, plaintiff is not receiving any income at present. As to expenses, plaintiff currently lives with his sister and presumably does not have a housing expense, yet he has stated that he will not be able to continue with this arrangement indefinitely. Id. Other than housing/utilities, the plaintiff's scheduled monthly expenses include $93 for telephone service, $100 for internet and cable, $400 for food, $25 for clothing, $25 for laundry and dry cleaning, $150 for transportation, $45 for recreation, and $20 in charitable contributions. Based on his lack of income, plaintiff likely has difficulty meeting these basic needs. The court therefore finds that the plaintiff satisfies the first prong of the Brunner test because he has shown an inability, based on current income and expenses, to maintain a minimal standard of living if he is required to repay the loans.

The second Brunner prong, however, is often the most difficult of the three prongs to prove. It requires debtors to show that "additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of their student loans." Mosko, 515 F.3d at 323. Courts have described this factor as requiring "'a total incapacity . . . in the future to pay [the debtor's] debts for reasons not within [the debtor's] control.'" Gerhardt, 348 F.3d at 92 (quoting In re Faish, 72 F.3d 298, 307 (3d Cir. 1995)). The Court of Appeals for the Fourth Circuit has observed that the second Brunner prong presents "'a demanding requirement,' . . . and

necessitates that a 'certainty of hopelessness' exists that the debtor will not be able to repay the student loans." Frushour 433 F.3d at 401 (quoting Brightful v. Pa. Higher Educ. Assistance Agency (In re Brightful), 267 F.3d 324, 328 (3rd Cir. 2001). According to the Frushour court, "[o]nly a debtor with rare circumstances will satisfy this factor." Frushour, 433 F.3d at 401.

Although the plaintiff has established that he would have difficulty repaying his student loans at present, he has not established additional circumstances indicating that his current financial condition is likely to continue for a significant portion of the loan repayment period. The plaintiff is very well educated, having earned both a bachelor's and master's degree in accounting. In addition, plaintiff received a passing score on all portions of the Certified Public Accountant examination. Plaintiff has worked as a staff accountant, a financial analyst, a business and treasury analyst, a senior cost specialist, a senior financial manager, and a senior consultant, and at one time held Top Secret security clearance. According to his Statement of Financial Affairs, plaintiff earned $58,913 in 2008, $66,263 in 2009, and $65,777 in 2010. In 2012, he obtained a license to sell insurance in the state of Virginia, passed the H&R Block tax preparer's exam, and also began the process of starting a management consulting business, though his efforts are currently stalled by his financial situation. Based on these achievements, it is clear that plaintiff has a strong educational background, a significant amount of related experience, and an entrepreneurial spirit.

According to the plaintiff, however, this is not enough. It is the plaintiff's position that he is unemployable based on the combination of his long term unemployment, spotty work history, and the fact that he is approaching the age of 50. None of these factors, however, constitute the type of "additional circumstances" that would satisfy the second prong of the Brunner test, especially

without evidence of any significant medical issues.[2]  As to the debtor's age, for example, in Spence v. Educational Credit Mgmt. Corp. (In re Spence), 541 F.3d 538 (4th Cir. 2008), the Fourth Circuit held that a debtor in her late 60s with a low-paying job did not satisfy the second prong of the Brunner test, where the evidence showed that she was a reliable, diligent worker with an extensive education.  Nor was a "certainty of hopelessness" found where a 61-year-old debtor described herself as approaching the end of her working years, based on the court's impression of her as energetic and in good health, as well as "an intelligent and articulate woman who has acquired several useful skill sets and significant experience applying them."  Gipson v. U.S. Dept. Of Educ. (In re Gipson), 2012 Bankr. LEXIS 2745 (Bankr. D. Md. June 13, 2012).

The court acknowledges that the plaintiff's current state of unemployment, which has lasted approximately two years, is not desirable.  What plaintiff has established about himself, however, through his affidavit and representations in court, is that he is hard-working, resilient, and determined.  Plaintiff's affidavit paints the picture of an individual who made the most of a challenging upbringing, achieved his goal of obtaining an education despite setbacks, and held numerous impressive jobs while dealing with workplace politics and organizations in turmoil.  Thus, in light of plaintiff's educational background and work history, as well as his demonstrated work ethic and drive to succeed, the court finds that his current state of unemployment does not rise to the level of an additional circumstance contemplated by Brunner.  This is even more so, given that

---

[2] The plaintiff has not asserted that he is unable to work because of any health issues.  The only evidence is this regard is a brief mention in the plaintiff's affidavit of a January 5, 2012 claim for disability benefits from the Department of Veterans Affairs.  A copy of a letter plaintiff sent to the VA in connection with the application is attached to the affidavit, and states that plaintiff has sleep apnea, which causes him mental and physical fatigue, as well as ankle and knee pain upon standing or walking for extended periods.

unemployment is unfortunately an all-too-common circumstance faced by debtors and non-debtors alike in the last several years. As such, an extended bout of unemployment, based on the current times, is more akin to a "garden-variety hardship" than an undue hardship sufficient to discharge student loans. See Held v. Am. Educ. Servs. (In re Held), 2010 Bankr. LEXIS 324 (Bankr. E.D. Tenn. 2010) (holding, in denying discharge of the debtor's student loans, "the fact that [debtor] was laid off and did not immediately find employment is a "garden-variety" hardship facing many debtors in Chapter 7 and does not rise to the level of "additional circumstances" necessary to evidence an undue hardship . . ."); Cf., Hoskins v. Educ. Credit Mgmt. Corp. (In re Hoskins), 292 B.R. 883 (Bankr. C.D. Ill. 2003) (finding the second prong of the Brunner test satisfied, based on the debtor's history of epilepsy, prolonged unemployment, and lack of job skills).

Nor does plaintiff's self-described "spotty" work history constitute an additional circumstance in satisfaction of the Brunner test. See Davis v. Educ. Credit Mgmt. Corp. (In re Davis), 373 B.R. 241, 250 (W.D.N.Y. 2007) (holding that the debtor's "history of intermittent employment," coupled with a series of low-paying jobs, a 15-year interval since receiving her degree, and treatment for depression did not constitute additional circumstances under Brunner). While it appears that plaintiff has held seven jobs in his field, this occurred during a period of approximately 15 years. Moreover, the jobs became progressively more demanding and prestigious, suggesting a natural progression in plaintiff's career. The court acknowledges that potential employers may ask plaintiff about his reasons for moving between these positions, but it is impossible for plaintiff to predict with certainty, as he appears to, that potential employers will choose not hire him based, at least in part, on this factor.

Further, consideration of plaintiff's future ability to repay his loans should not be limited to his possibilities under the traditional model of employment. Plaintiff has already demonstrated an interest in starting a management consulting business as well as performing freelance accounting work. In addition, plaintiff's affidavit indicates that earlier this year, he enrolled in the Mechanical Engineering Technology Program at Wake Technical Community College.[3] Although his current enrollment status is uncertain, as he states he violated the attendance policy for one course by spending too much time on this case, plaintiff indicates that his ultimate goal is to pursue a four-year engineering degree through a transfer program with North Carolina State University. Achieving this goal would clearly add another avenue through which plaintiff might earn income. Additionally, it adds further support to the court's conclusion that this plaintiff's situation is not hopeless at all – the road ahead may be difficult, but taken together, plaintiff's educational background, aspirations for furthering his education, past work experience, and entrepreneurial spirit are all attributes that suggest the likelihood of an improvement to his current financial situation.[4] Accordingly, the court finds that the plaintiff has not shown that his current state of affairs is likely to persist, and therefore fails to satisfy the second prong of the Brunner test.

In light of the debtor's inability to meet the second requirement of the Brunner test, the court need not analyze the third requirement, i.e., whether the debtor has made a good faith attempt to

---

[3] According to the affidavit, the Veterans Retraining Assistance Program provided tuition assistance.

[4] Regarding past work experience, the plaintiff asserts in his Response to Memorandum of Law in Support of Motion for Summary Judgment, Docket No. 31, that it is improper to base an analysis of future work prospects on past performance. Instead, plaintiff argues that his present situation is the only relevant period of time because Brunner calls for a prospective analysis. The court, however, must consider past work experience, as well as education and any other credentials already obtained, because these factors necessarily contribute to the likelihood of an individual's ability to make a living in the future.

repay the loans, because a debtor must meet all three requirements of the Brunner test in order to discharge student loans. Davis v. Educ. Credit Mgmt. Corp., (In re Davis), 373 B.R. 241, 245 (W.D.N.Y. 2007) ("'If one of the requirements of the *Brunner* test is not met, the bankruptcy court's inquiry must end there, with a finding of no discharageability.'") (citations omitted).

Because the plaintiff has not satisfied the second prong of the Brunner test, he has not established that an undue hardship would result if his student loans are not discharged. Consequently, the court holds that the plaintiff's student loans are not dischargeable pursuant to § 523(a)(8).

Remaining for consideration, however, is the plaintiff's alternative claim that § 523(a)(8) is void for vagueness, and should be clarified by Congress. The court has no jurisdiction to consider this claim, however, because the United States Bankruptcy Court for the Eastern District of Virginia dismissed the claim within the present proceeding on May 18, 2012. As such, the law of the case doctrine applies. Under the law of the case doctrine,

> "a court should not reopen issues decided in earlier stages of the same litigation. Agnostini v. Felton, 521 U.S. 203, 236 (1997); Columbus-America Discovery Group v. Atl. Mut. Ins. Co., 203 F.3d 291, 304 (4th Cir. 2000) (stating "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case") . . . The doctrine "presumes a hearing on the merits," U.S. v. Hatter, 532 U.S. 557, 566 (2001), and it would not apply "if the court is convinced that [its prior decision] is clearly erroneous and would work a manifest injustice." Agnostini, 521 U.S. at 236. It also would not apply where there has been an intervening change of controlling law or new evidence has been discovered. Binkley v. Loughran, 714 F. Supp. 776, 778 (M.D.N.C. 1989); *see also* Dow, 311 F. Supp. 2d at 465 (doctrine does not apply where parties have "presented new evidence or arguments, or if the prior ruling is legally erroneous"). According to the Fourth Circuit, the doctrine "is not a matter of rigid legal rule, but more a matter of proper judicial administration which can vary with the circumstances." Hill v. BASF Wyandotte Corp., 696 F.2d 287, 290 n.3 (4th Cir. 1982).

14

Watts v. Slough (In re Slough), Adv. Pro. No. L-04-00015-8-JRL (Bankr. E.D.N.C. Aug. 25, 2005). Here, the prior bankruptcy judge assigned to this case, the Honorable Brian F. Kenney, for the Eastern District of Virginia, conducted a hearing on the USDE's motion to dismiss this same constitutional claim. The plaintiff appeared at the hearing and represented himself, as he has throughout this proceeding, and the USDE appeared through counsel. The Virginia court entered an "Order Dismissing Count II," on May 18, 2012, which grants the motion to dismiss "[u]pon consideration of the entire record in this case, the argument presented by the parties, and for the reasons stated on the record at the hearing." Order, Case No. 11-01653-BFK, Docket No. 46. Although the plaintiff was allowed to file the Second Amended Complaint pursuant to this court's order dated March 28, 2013 (the "March 28, 2013 Order"), after the Virginia court's dismissal of the constitutional claim, the March 28, 2013 Order noted that only legal arguments were asserted, as opposed to new factual allegations. Of those legal arguments, no new arguments were presented. Accordingly, this court will not disturb the Virginia court's dismissal of the plaintiff's constitutional claim.

Based on the foregoing, the USDE's motion for summary judgment is **GRANTED**. A separate judgment will be entered accordingly.

    **SO ORDERED.**

**END OF DOCUMENT**